UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DANDRE ALEXANDER,

                 Plaintiff,                 Case No. 2:16-cv-67

v.                                  Honorable Robert Holmes Bell

ARNULFO ORTIZ,

                 Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections (MDOC) and the State of Michigan. The Court will also dismiss Plaintiff's claims that Defendant Arnulfo Ortiz violated his due process and equal protection rights, subjected him to cruel and unusual punishment, and violated

the Fourth Amendment.  The Court will serve the complaint against Defendant Ortiz with regard to Plaintiff's retaliation claim.

## Discussion

I.      Factual allegations

Plaintiff Dandre Alexander, a state prisoner currently confined at the Woodland Center Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Arnulfo Ortiz, the Michigan Department of Corrections, and the State of Michigan.  In his complaint, Plaintiff alleges that on December 22, 2013, while he was confined at the Chippewa Correctional Facility (URF), he was involved in a fight.  Plaintiff was subsequently informed that there was a hit out on him for being involved in the fight.  On December 31, 2013, Plaintiff informed Defendant Ortiz of the threat.  Defendant Ortiz told Plaintiff that if he kept "bugging" him, he would regret it.

On March 10, 2014, Plaintiff had prison employee Gary Mcleod notarize an affidavit in which Plaintiff attested that Defendant Ortiz had been retaliating against him ever since Plaintiff requested protection from the hit.  Mcleod told Plaintiff that Defendant Ortiz was not going to like the affidavit.  A short time later, Defendant Ortiz came to Plaintiff's cell and stated, "Where is it? Give me the paper now!"  Plaintiff refused to comply.  Plaintiff then left to go to an off-site health appointment.  When Plaintiff returned to his cell, he found it had been trashed.  Plaintiff alleges that Defendant Ortiz had confiscated and destroyed his property, including legal papers, copies of grievances, pictures of his deceased mother, and a book.  Plaintiff never received any paperwork regarding the seized property.

Plaintiff's neighbor executed an affidavit for Plaintiff, stating:

-2-

> On 3/10/14 at morning round for legal mail the [Assistant Resident Unit Supervisor] stopped at Alexander['s] door to notarize his mail and the [Assistant Resident Unit Supervisor] read the paper and said these officers don't fuck around.  Then after lunch [Corrections Officer] Ortiz came back to Prisoner Alexander['s] cell and ask where is the paper at.  Give it to me.  Then he said you want to play games then we going to play and shortly after Alexander was taken out to go to the hospital [Corrections Officer] Ortiz came down and begin [stet] trashing Mr. Alexander's cell.  He took down his pictures off the wall and window [sill] and ripped them up and I believe flushed them down the toilet because I heard the toilet flush.  He also tossed around and destroyed a lot of papers by flushing them.  He took prisoner items out of cell too.  I believe he did this because of the paper that the [Assistant Resident Unit Supervisor] notarized this morning.  I directly observe[d] all this across the hall in my cell #106.

*See* ECF No. 1-5, PageID.16.  The affidavit was signed "Jay Juan Watts #737713" and was time and

dated 7:00 pm, March 10, 2014.

Plaintiff filed a grievance regarding the loss of his property, which was rejected at

step I.  At step II, Warden Jeffrey Woods responded:

> Officer Ortiz was interviewed and stated grievant had an appointment so Officer Ortiz told him he needed to get ready.  When he was brought upstairs to the Officer to take him to his appointment he didn't have his state shirt on.  Officer Ortiz said while he was gone to his appointment he shook down his cell and found extra linens, extra towels, food and utensils.  Office[r] Ortiz took the extra linens and extra towels and disposed of the stored food and utensils.  Officer Ortiz stated grievant's claim of destroying legal papers, pictures and books is not true.
>
> There has been no evidence presented to support grievant's allegation against Officer Ortiz and grievant has provided nothing to the contrary.  No violation of policy exists.

*See* ECF No. 1-4, PageID.15.  Plaintiff's step III appeal was also denied.  *See* ECF No. 1-6,

PageID.17.

Plaintiff claims that Defendant Ortiz lied about what was taken from his cell and that the grievance respondents failed to review video footage from the camera outside his cell, despite his request for such a review.  Plaintiff states that the cell search was retaliatory and violated his due process and equal protection rights, violated the Fourth Amendment, and constituted cruel and unusual punishment.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections or the State of Michigan. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections)

-5-

is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the Court dismisses the Michigan Department of Corrections and the State of Michigan.

Plaintiff contends that Defendant Ortiz violated his Fourth Amendment rights in his search of Plaintiff's cell and seizure of Plaintiff's property.  In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim similar to Plaintiff's. In that case, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535.  The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, ... chief among which is internal security." *Id.* at 523–24 (internal citation omitted).  The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell [.]"  *Id.* at 528 n.8.  According to the Court, "[p]rison officials must

be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit Defendant Ortiz from searching his cell. Moreover, it did not prevent Defendant Ortiz from confiscating items in Plaintiff's cell because they appeared to be contraband. Therefore, Plaintiff does not state a Fourth Amendment claim.

Plaintiff makes a conclusory assertion that Defendant Ortiz' conduct violated his equal protection rights. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).

Plaintiff does not identify the theory for his equal protection claim. Assuming that he intends to raise a claim that his right to equal protection was violated when his cell was searched and items were confiscated from his cell. As discussed, prisoners are not considered a suspect class. *Jackson,* 411 F.3d at 619. As a consequence, Defendant Ortiz' conduct need only be rationally related to a legitimate governmental interest. *See United States v. Kras*, 409 U.S. 434, 446 (1973); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). To prove his equal protection claim, Plaintiff must demonstrate the search and seizure involved "intentional and arbitrary discrimination"

by the state . . . and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

To the extent that Plaintiff alleges that he was treated differently from all other prisoners, he fails to state a claim under the "class-of-one" model.  To prove his class-of-one claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's allegation of discriminatory treatment is wholly conclusory.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Plaintiff alleges no facts suggesting that he was intentionally treated differently than any similarly situated person, nor has he identified such person.  Therefore, Plaintiff's equal protection claim is properly dismissed.

Plaintiff alleges that Defendant Ortiz subjected him to cruel and unusual punishment when he search Plaintiff's cell and seized his property.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only

-8-

concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The court concludes that Plaintiff's allegations against Defendant Ortiz fail to rise to the level of an Eighth Amendment deprivation.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10

F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's due process claim will be dismissed.

Finally, Plaintiff claims that the actions of Defendant Ortiz were motivated by a desire to retaliate against Plaintiff after Defendant Ortiz learned that Plaintiff had authored a complaint against him.  After carefully reviewing Plaintiff's allegations in this case, the court concludes that his retaliation claim is non-frivolous and may not be dismissed on initial review.

-10-

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections and State of Michigan will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's claims that Defendant Ortiz violated his due process and equal protection rights, subjected Plaintiff to cruel and unusual punishment, and violated Plaintiff's Fourth Amendment rights. The Court will serve the complaint against Defendant Ortiz with regard to Plaintiff's retaliation claim.

An Order consistent with this Opinion will be entered.


Dated: April 27, 2016                                    /s/ Robert Holmes Bell
                                                         ROBERT HOLMES BELL
                                                         UNITED STATES DISTRICT JUDGE